UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>DUSTIN SEEGRIST,<br><br>　　　　　　Defendant. | CR. 19-50014-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant Dustin Seegrist, appearing *pro se*, filed a motion for compassionate release.  (Docket 100).  Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Seegrist's motion.  (Dockets 101 and 102).   For the reasons stated below, defendant's motion is denied.

**STANDING ORDER 20-6**

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of

---

[1]See https://www.sdd.uscourts.gov/socraa ("SO 20-06").

the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1). Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act." Id. at ¶ 1. The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already. These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. at ¶ 2.

By the standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. at p. 2 ¶ 4. Those categories are:

a. High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

b. Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

c. Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

d. Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id.  The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office."  Id.

## FACTUAL BACKGROUND

On August 26, 2019, Mr. Seegrist pled guilty to possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  (Docket 82).  Mr. Seegrist was sentenced to a term of imprisonment of 120 months and a term of five years supervised release.  (Docket 93).  According to Mr. Seegrist's presentence report ("PSR"), "[b]ased upon a total offense level of 31 and a criminal history category of V, the guideline imprisonment range is 168 months to 210 months."  (Docket 85 at ¶ 73).  Mr. Seegrist's mandatory minimum was 10 years.[2]

Mr. Seegrist is currently an inmate at the United States Penitentiary in Greenville, Illinois ("FCI Greenville").  According to the United States, Mr. Seegrist has a scheduled release date of April 26, 2027.  (Docket 104 at p. 1).

## MR. SEEGRIST'S CLASSIFICATION

On September 9, 2021, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion.  (Docket 101).  They jointly "agree that this case should be categorized as a Low Priority case."  Id.

---

[2]Mr. Seegrist's mandatory minimum was reduced from 15 years to 10 years pursuant to the First Step Act.

## ANALYSIS

### A. Legal Standard

Because sentences are final judgments, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act ("FSA"), which amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release.

Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The inmate bears the burden to establish that compassionate release is warranted. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). The district court is not required to investigate possible avenues for relief or to develop the record in support of a motion. United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons."

Congress did not define what constitutes "extraordinary and compelling." 28 U.S.C. § 994(t).  Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples.  Id.  Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios which are the consideration of the defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served and (4) compelling family circumstances.  Id.  There is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).  These categories have not been updated since December 2018 when FSA became law.

As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies.  See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act").  The purpose of the First Step Act is to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by

5

the BOP before the passage of the First Step Act.  It is clear Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission.  See 18 U.S.C. § 3582(c)(1)(A).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Mr. Seegrist submitted a request for compassionate release to FCI Greenville's Warden; the request was denied on September 15, 2021.  (Docket 102 at p. 165).  Mr. Seegrist satisfied his exhaustion requirement.

## B. **Defendant's Motion for Compassionate Release**

Mr. Seegrist argues his health conditions qualify as extraordinary and compelling reasons which require compassionate release.  (Docket 100 at p. 5; Docket 105 at p. 2).  Mr. Seegrist argues he

> has serious physical and mental conditions that [he is] not getting the appropriate care for in the B.O.P.  [He] has spinal stenosis and degenerative disk disease which [he has] had M.R.I.'s on since 2018 saying [he] needs surgery under Marshall/B.O.P. care and still have not received it.  [He] also [has] nerve and muscle damage which is being ignored.  [He is] not being given adequate meds or treatment for any of this.  Also, we gotten the corona virus while being incarcerated and am in a code red area for the pandemic.  [His] well being would be much better and treated on release.

Id.

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions.  The Centers for Disease Control and Prevention ("CDC") updated its current understanding of these risks.  See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention (Feb. 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/needextra-precautions/people-with-medical-conditions.html.  The CDC identified the following conditions as ones that pose an increased risk of severe illness from COVID-19, including cancer, chronic kidney disease, chronic obstructive pulmonary disease, heart conditions, obesity (a BMI of 30 or higher), type 2 diabetes and several others. People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Feb. 22, 2021).  The CDC advises that other medical conditions might pose an increased risk of severe illness from COVID-19, including moderate to severe asthma, cystic fibrosis, hypertension or high blood pressure, liver disease, type 1 diabetes and several others.  Id.

Mr. Seegrist's medical records confirm he has spinal stenosis, unspecified neuralgia and neuritis, sprain to his neck joint/ligament and dermatitis or dermatophytosis.  Id. at pp. 73, 74, 116.  On July 26, 2021, Mr. Seegrist had a neurological surgery consultation in which his neck pain and spinal stenosis were discussed.  Id. at pp. 35-40.  Mr. Seegrist was scheduled

to have surgery on October 28, 2021.³  Id. at p. 3.  The court finds Mr. Seegrist's medical records reveal he is receiving proper care for his ailments while incarcerated.  "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."  United States v. Gould, 4:19-CR-40017-01, 2021 WL 872694, at 4 (D.S.D. Aug. 12, 2020).

Mr. Seegrist is currently 41 years old.  See Federal Bureau of Prisons' Inmate Locator, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited Feb. 7, 2023).  CDC guidance lists people who are over the age of 65 at high risk of getting very sick from COVID-19.

Mr. Seegrist's age and health conditions do not prevent him from providing self-care in a correctional facility setting, and his medical conditions do not amount to extraordinary and compelling circumstances.

Against Mr. Seegrist's medical conditions, the court must weigh the steps the BOP has undertaken to manage the spread of COVID-19 within the facilities and to treat inmates who become infected.  The BOP made significant changes to correctional operations since the pandemic started in early 2020. See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 6, 2023); see also www.bop.gov/coronavirus/ (BOP's "action plan" described in detail).  These changes include sanitary and safety measures, restrictions on movement and visitation restrictions, among others.  Id.  The BOP also transferred many thousands of inmates to home

---

³The court is unaware if surgery occurred.

confinement. See id. These measures have led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources.

The court believes Mr. Seegrist's medical conditions are appropriately managed at FCI Greenville, as the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19 and the facility would act to treat any inmate who does contract COVID-19. There have not been any deaths by inmates or staff. Id. Currently there is one inmate with COVID-19, and 673 inmates have recovered from COVID-19. Id. There are currently no staff with COVID-19, and 122 staff have recovered from COVID-19. Id. This persuades the court that FCI Greenville has acted appropriately to treat inmates who contract COVID-19 and will continue to do so.

The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this stage of the COVID-19 pandemic. The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. At FCI Greenville, 170 staff members and 1323 inmates are vaccinated. See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/ coronavirus/ (last visited Feb. 6, 2023). Mr. Seegrist had COVID-19 in October 2020. (Docket 102 at p. 28). He received two doses of the COVID-19 vaccine in March 2021. Id. at p. 30.

Mr. Seegrist's health concerns are understandable; however, his medical conditions coupled with the present conditions at FCI Greenville, do not establish extraordinary and compelling reasons warranting compassionate release.

### C. 3553(a) Factors

The 3553(a) sentencing factors further show that compassionate release is not warranted. These factors include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;
2. the need for the sentence imposed—
   a. to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;
   b. to afford adequate deterrence to criminal conduct;
   c. to protect the public from further crimes of the defendant; and
   d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

Mr. Seegrist pled guilty to possession with intent to distribute a controlled substance and was sentenced to a term of imprisonment of 120 months and a term of five years supervised release. (Dockets 82 and 93). Mr. Seegrist's guideline imprisonment range was 168 months to 210 months. (Docket 85 at ¶ 73).

Mr. Seegrist's factual basis statement details that on September 21, 2018, the Rapid City police department received a call from a business complex worker reporting of an unwanted subject and gave a description of the

unknown subject.  (Docket 72).  Officers responded to the scene and found the subject.  Id.  Mr. Seegrist initially lied about his name.  Id.  Mr. Seegrist had an outstanding warrant and was arrested.  Id.  He was searched incident to arrest and a "clear plastic bag with white crystal substance that tested positive for methamphetamine and a hypodermic needle" was found.  Id.  While at the jail, officers found a drawstring bag on Mr. Seegrist's person.  Id.  Within the bag was a loaded SIG Sauer and an automatic pistol.  Id.  Additionally, there was "a large amount of crystal substance that was approximately the size of a softball, other smaller bags with white crystal substance, and a small scale."  Id.  The substance was determined to be approximately 311 grams of methamphetamine.  Id.

     Mr. Seegrist has an extensive criminal history beginning when he was seventeen years old.  (Docket 85 at ¶¶ 26-33).  In 1999, Mr. Seegrist was charged an as an adult for Aggravated Assault (10/07/1999) and vandalism (10/21/1999) in Rapid City, South Dakota.  (Docket 85 at ¶¶ 26-27).  Furthermore, from September 21, 2018, through December 1, 2019, Mr. Seegrist was detained at the Pennington Country Jail.  During that time, he was subject to disciplinary action over 15 times.  (Docket 85 at ¶ 4).  Mr. Seegrist failed to establish how his behavior has changed to warrant a consideration in his favor.

     Mr. Seegrist failed to establish that the § 3553(a) factors support relief.

11

**ORDER**

Based upon the above analysis, it is

ORDERED that defendant's motion for compassionate release (Docket 100) is denied.

Dated March 30, 2023.

        BY THE COURT:

        /s/ *Jeffrey L. Viken*
        JEFFREY L. VIKEN
        UNITED STATES DISTRICT JUDGE